## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

SYNGENTA SEEDS, LLC,

       Plaintiff,

    v.

ALTEN, LLC; MEAD CATTLE COMPANY, LLC; GREEN DISPOSAL MEAD LLC; TANNER SHAW; and SCOTT TINGELHOFF,

       Defendants.

CASE NO. 8:22-cv-71

**COMPLAINT**

COMES NOW Plaintiff, Syngenta Seeds, LLC ("Syngenta"), and for its Complaint against the Defendants, states and alleges as follows:

### NATURE OF THE CASE

1.    Syngenta brings this lawsuit to hold Defendants accountable for their failure to address environmental hazards they caused and to recoup the substantial money Syngenta has spent on correcting Defendants' failed environmental management.

2.    Defendant AltEn, LLC ("AltEn") owns an ethanol manufacturing facility in Mead, Nebraska ("AltEn Facility"). Defendants Mead Cattle Company, LLC ("Mead Cattle") and Green Disposal Mead, LLC ("Green Disposal") conducted operations at the AltEn Facility. Defendants Tanner Shaw ("Shaw") and Scott Tingelhoff ("Tingelhoff") ran all of those companies' operations.

3.    Defendants mismanaged and ultimately abandoned the AltEn Facility last winter, leaving significant environmental risks. They left millions of gallons of untreated waste water on the site. Lagoons holding the wastewater were overfilled and at risk of failing. Thousands of tons of waste from AltEn's ethanol refining process remained unattended. Environmental controls were lacking or nonexistent.

4.     Defendants refused to remedy the mess.  They disregarded their obligations under federal and state environmental laws, forcing the State of Nebraska to file a lawsuit to enforce these obligations.

5.     Last year, Syngenta, along with five other seed suppliers to AltEn, stepped up to the plate and volunteered to address immediate risks at the site, although they had not caused the AltEn mess.  They did what Defendants were obligated to do but did not.  They took action to protect the people and environment surrounding the AltEn Facility.  They formed a response group, the AltEn Facility Response Group ("AFRG"), to stabilize environmental conditions at the AltEn Facility necessitated by the Defendants' improper and unlawful actions.

6.     The AFRG has already spent several millions of dollars performing that work, and site conditions are significantly improved as a result.  Syngenta brings this lawsuit to recover from Defendants their share of those costs. Defendants should have done the work that the AFRG has done, and they should reimburse Syngenta.

## PARTIES

7.     Syngenta is a Delaware limited liability company.  Its single member is Syngenta Corporation, which is a Delaware corporation whose principal place of business is in Delaware.

8.     AltEn is a Kansas limited liability company with its principal office located at 5225 Renner Road, Shawnee, Kansas 66217.  Upon information and belief, AltEn's known member is Platte River Green Fuels, LLC.  Platte River Green Fuels, LLC is a Kansas limited liability company and its known members are E3 Platte River, LLC, and Falcon Energy, LLC, which are identified in Platte River Green Fuels, LLC's Annual Report for the State of Kansas with an address of 5225 Renner Road, Shawnee, Kansas 66217.  E3 Platte River, LLC is a Kansas limited liability company and its known members are Falcon Energy, LLC and E3 Bio Fuels, LLC, which are identified in E3 Platte River LLC's Annual Report for the State of Kansas with an address of 5225 Renner Road, Shawnee, Kansas.  Upon information and belief, Falcon Energy, LLC is a Delaware limited liability company

with an address of 5225 Renner Road, Shawnee, Kansas 66217. Upon information and belief, E3 Bio Fuels, LLC is a Delaware limited liability company and its known member is Earth, Energy & Environment, LLC. Earth, Energy & Environment, LLC is a Kansas limited liability company and has two known members, Dennis Langley (now deceased) and Langley Group Ltd., a Kansas for-profit corporation with an address of 5225 Rennder Road, Shawnee, Kansas 66217. All of the members and submembers of AltEn share AltEn's principal address. That address is not an office building. It is a residential property that until recently was owned by the late Dennis Langley, a principal of AltEn.

9.     Mead Cattle is a Nebraska limited liability company, with its principal office located at 1344 County Road 10, Mead, Nebraska 68041 (the same as the AltEn Facility). Upon information and belief, the members and submembers of Mead Cattle trace back to one or more of the entities and other persons identified in Paragraph 8.

10.     Green Disposal is a Nebraska limited liability company, with its principal office located at 1344 County Road 10, Mead, Nebraska 68041 (the same as the AltEn Facility). Green Disposal owns and previously operated a biochar production unit at the AltEn Facility. Upon information and belief, the members and submembers of Green Disposal trace back to one or more of the entities and other persons identified in Paragraph 8.

11.     At all relevant times, upon information and belief, AltEn, Mead Cattle, and Green Disposal were operated and/or managed by the same persons, among whom were Shaw and Tingelhoff, and Shaw's stepfather, Dennis Langley, then a resident of Kansas who is now deceased.

12.     Shaw is an individual who, upon information and belief, is domiciled in and is a citizen of Kansas City, Missouri and/or Kansas City, Kansas. At all relevant times, Shaw was and is the President and Chief Executive Officer of AltEn, Mead Cattle, and Green Disposal.

13.     Tingelhoff is an individual and a citizen of Nebraska. At all relevant times herein, Tingelhoff was and is currently the General Manager of AltEn.

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states, and the amount in controversy exceeds the required threshold.

15.     For purposes of diversity jurisdiction, Syngenta is a citizen of Delaware, and, upon review of information publicly available to Syngenta, none of the named Defendants or their respective members or submembers is a citizen of Delaware.

16.     The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.     This Court has personal jurisdiction over the Defendants. They either have contacts with the State of Nebraska sufficient to establish general jurisdiction over them here and/or committed acts in and otherwise have sufficient minimum contacts with the State of Nebraska such that they could reasonably expect to be haled into court in this forum.

18.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, transactions, and occurrences giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### *AltEn's Ethanol Manufacturing Facility and Related Operations*

19.     The AltEn Facility made ethanol for use as an engine fuel and fuel additive. Ethanol is an organic chemical compound produced by the distillation of organic materials like corn, wheat, sorghum, milo seed, and other grains (collectively, "Seed"). Distiller's grains, also called "wet cake," are a byproduct of ethanol production. Wet cake is essentially the residue of the organic materials from which the ethanol is produced.

20.     The ethanol plant at issue was built in 2007 and originally owned by E3 Biofuels-Mead, LLC. The groundbreaking ceremony for the plant was attended by U.S. Environmental Protection Agency ("EPA") and Nebraska State officials. AltEn eventually acquired it in or about 2013 following E3 Biofuels-Mead, LLC's

bankruptcy.  After becoming the owner of the AltEn Facility, AltEn obtained state and federal permits that subjected it to numerous regulatory requirements and inspections.

21.    AltEn operated the AltEn Facility for several years, producing approximately 24,000,000 gallons of ethanol annually, until it abruptly abandoned the site last winter.

22.    At all times relevant to this action, Mead Cattle owned and operated a cattle feedlot adjacent to the AltEn Facility.  Mead Cattle's operations functioned in conjunction with the AltEn Facility.  Mead Cattle sent manure to the AltEn Facility.  The manure was fed into two "digesters" that turned the manure into methane, which AltEn used to power its ethanol production.  All five of the lagoons where Mead Cattle sent manure from its feedlot were located on the AltEn Facility.

23.    At all times relevant to this action, Green Disposal owned and operated equipment at the AltEn Facility to make biochar from wet cake generated by AltEn's ethanol production.  Biochar is a charcoal made by burning biomass at high temperatures in an inert (air-free) oven.  Green Disposal's biochar was intended to be added to soil to enhance the soil's fertility.

24.    Green Disposal stored its biochar at the AltEn Facility in large totes made of a flexible, woven fabric called "supersacks."

25.    An aerial photograph of the AltEn site is attached hereto as **Exhibit A**.

26.    AltEn, Mead Cattle, and Green Disposal shared an entrance onto the AltEn Facility's property.  The sole entry point to Mead Cattle's property was from the AltEn Facility's property.

27.    The AltEn Facility and Mead Cattle's property also shared a natural gas pipeline.  AltEn and Mead Cattle shared their property for other aspects of their operations as well.

28.    At all times relevant to this action, Tingelhoff and Shaw managed the AltEn Facility and oversaw and directed its operations, as well as the operations of Mead Cattle and Green Disposal.

29.     At all times relevant to this action, the Defendants were engaged in a business, employment, and/or agency relationship with one another concerning the ownership, operation, management, control, and/or supervision of the AltEn Facility, Green Disposal, and Mead Cattle.

***Syngenta's Contract with AltEn***

30.     As originally constructed, the ethanol plant used "untreated" seed to make ethanol.  AltEn adapted it to use "treated" seed as a raw material for the production of ethanol.  Treated seed refers to seed that has been coated with pesticides that are registered and approved by EPA and the Nebraska Department of Agriculture ("NDA") for this specific use.  Treated seed is also regulated by the U.S. Department of Agriculture under the Federal Seed Act.  Seed treatments are used to protect the seed from disease and to limit crop damages from fungus and insects.  Treated seed is a lawful and very important product to the Nation's farmers.

31.      The State of Nebraska authorized AltEn's use of treated seed. In 2012, AltEn notified the Nebraska Department of Environmental Quality ("NDEQ"), in multiple letters sent to multiple divisions within NDEQ, that the company was reviewing the feasibility of using treated seed as a raw material for ethanol production. AltEn requested that NDEQ modify its existing waste water discharge permit and compost permit to allow for the use of treated seed at the AltEn Facility. In both instances, NDEQ issued modified permits (NPDES Permit No. NE0137634 and Waste Management Permit No. NE0204447) containing provisions acknowledging and allowing the use of treated seed at the AltEn Facility.

32.     AltEn obtained treated seed for use in its production of ethanol from several companies, including Syngenta.

33.     AltEn and Syngenta entered into a Renewable Resource Material Agreement on or about July 1, 2016, which was amended April 1, 2018, (the "First Amendment") and again on July 1, 2019 (the "Second Amendment").  Collectively, the Renewable Resource Material Agreement and its amendments are referred to herein as the "RRM Agreement."

34.     The RRM Agreement required AltEn to utilize the Seed in a safe and lawful manner and to comply with all applicable laws and regulations.

35.     AltEn represented and warranted to Syngenta in the RRM Agreement that AltEn had the requisite experience, knowledge, and expertise, suitable facilities, and qualified personnel to utilize the Seed.

36.     The RRM Agreement also required AltEn to keep in effect all permits, licenses, and other documentation required or that might become required to comply with governmental laws, rules, or regulations.

37.     Further, the RRM Agreement provided that AltEn will indemnify and hold harmless Syngenta from and against any and all claims, damages, losses, costs, and expenses arising out of or connected with the Seed, including AltEn's utilization of the Seed or any other activities or operations of AltEn and its employees and agents, including negligence of AltEn or its employees and agents.

38.     The RRM Agreement further provided that AltEn will indemnify and hold harmless Syngenta for AltEn's failure to comply with any applicable laws, orders, rules, or regulations, in addition to liabilities or damages resulting from any contamination of water, air, land, or the environment.

### *Defendants' Failure to Comply with Permit Obligations*

39.     In documents provided to NDEQ to support the use of treated seed in the ethanol manufacturing process, AltEn stated that the resulting wet cake would be used in its digesters for biogas production.  AltEn committed to test the chemical composition of the compost.  AltEn also stated that land application rates of the material would follow the stricter of the NDEQ agronomic loading rates or the chemical loading rates as required by the EPA, Federal Seed Act, or seed manufacturer guidelines.

40.     Despite AltEn's representations, in 2017, the NDEQ found approximately 30,000 tons of wet cake stored at the AltEn Facility, indicating it was not being used in the digesters.  Given this exorbitant amount of wet cake, NDEQ ordered AltEn to prepare and implement a management plan to dispose of the wet cake by mid-January 2018.

41.     AltEn, acting at Shaw's and Tingelhoff's direction, failed to comply with the NDEQ's order.

42.     AltEn did conceive a plan to apply the wet cake to soil.  AltEn registered its wet cake with the NDA as a soil conditioner under the Nebraska Commercial Fertilizer and Soil Conditioner Act.   State officials subsequently collected samples of AltEn's wet cake for testing.  The NDA issued AltEn a Stop-Use and Stop-Sale Order on May 17, 2019, that prohibited the wet cake's distribution as a soil conditioner (*i.e.*, prohibiting land application), which accelerated the accumulation of wet cake at the AltEn Facility.

43.     On July 1, 2019, NDEQ merged with the Nebraska Energy Office to become the Nebraska Department of Environment and Energy ("NDEE").

44.     On September 23, 2019, NDEE issued a Notice of Violation ("NOV") to AltEn for waste disposal violations, including operating a solid waste management facility on its property without a permit, prohibited AltEn from stockpiling the wet cake onsite, and required disposal of the wet cake at a permitted solid waste management facility.

45.     In clear defiance of the NOV, AltEn continued to stockpile wet cake onsite without submitting a disposal plan or having a solid waste management permit as ordered in the NOV.

46.     By February 2020, Green Disposal too faced environmental violations related to the use of its biochar unit at the AltEn Facility and entered into a Consent Decree with NDEE to allow limited operation and testing of its biochar unit.

47.     A year later, on February 1, 2021, NDEE conducted a site visit and inspected three lagoons (West, Northeast, and Southeast Lagoons) at the AltEn Facility.   The lagoons were used to hold approximately 180 million gallons of wastewater from AltEn's, Mead Cattle's, and Green Disposal's manufacturing processes.

48.     NDEE found that each lagoon was overfilled beyond the engineering design specifications for the lagoons, in violation of AltEn's permit requirements

and Nebraska law.  NDEE also found that lagoon liners had not been repaired as required by the NOV and were not properly maintained.

49.     On February 4, 2021, NDEE issued a Complaint and Order requiring AltEn to immediately cease discharge of industrial wastewater into its wastewater lagoons.

50.     Thereafter, on February 8, 2021, Defendants shut down the AltEn Facility and stopped ethanol and biochar production.

51.     They have not resumed production.

### The February 2021 Discharge

52.     Just four days after the AltEn Facility shut down, on February 12, 2021, a frozen pipe on one of two anaerobic digesters at the AltEn Facility ruptured, spilling out a significant volume of waste materials.  The digesters each can hold 4 million gallons.

53.     The significant discharge of these waste materials was uncontrolled and unpermitted, and flowed onto and off the AltEn Facility property into a drainage ditch and onto neighboring properties located as far as 4.5 miles from the digester tank.  The discharge was due to Defendants' abandonment of the site without proper measures to safeguard the digesters.

54.     The waste that was released in February 2021 from one of the two digesters included manure from Mead Cattle.

55.     Subsequent sampling and testing of ten emergency lagoon sludge samples by contractors for the AFRG in October 2021 showed the presence of animal byproduct residues in AltEn's emergency lagoon. All emergency lagoon samples contained *fecal coliform* indicating the presence of animal byproduct residues, and more than 99 percent of saturated fat in lagoon samples was from sources other than soil-wet cake. This indicates that a portion of the waste discharged from and stored at the AltEn Facility was Mead Cattle's waste.

***Defendants' Refusal to Mitigate and Clean Up***

56.     On February 17, 2021, the NDEE issued a letter of non-compliance to AltEn, instructing AltEn to undertake efforts to mitigate and clean up the February 12, 2021 discharge from the AltEn Facility.

57.     AltEn did not comply with NDEE's directive.

58.     On February 20, 2021, after AltEn refused to address the discharge and was otherwise nonresponsive to NDEE's mandates, NDEE issued an Emergency Order and Complaint ("Emergency Order") requiring AltEn's immediate action to mitigate the discharge.  The Emergency Order also prohibited AltEn from resuming commercial and industrial operations until the discharge had been sufficiently remediated and would not further threaten or harm public health and the environment.

59.     AltEn failed to comply with the NDEE's Emergency Order.

60.     On March 1, 2021, the State of Nebraska filed a Complaint against AltEn in the District Court of Saunders County, Nebraska, for violating the Emergency Order and for violations of the Nebraska Environmental Protection Act ("NEPA"), the Integrated Solid Waste Management Act ("ISWMA"), and permit conditions.

61.     AltEn, acting at Shaw's and Tingelhoff's direction, has failed to undertake any efforts to clean up the February 12, 2021 spill and has not participated in mitigation or cleanup efforts of the AltEn Facility to date.

62.     The other Defendants too took no efforts to clean up the February 12, 2021 spill or participate in mitigation or cleanup efforts of the AltEn Facility to date.

***Syngenta's Voluntary Response Following the February 2021 Discharge***

63.     Defendants left the AltEn Facility in a state that presented significant environmental risks.  In addition to the unremediated wastewater release from the discharger, they left thousands of tons of untreated wet cake on the property in improperly managed and inadequately secured piles.  They left a property with

insufficient environmental controls. They left the lagoons overfilled with wastewater and in risk of failing.

64. Confronted with these hazards and Defendants' irresponsible and illegal failure to abate them, NDEE turned to Syngenta and other seed companies for assistance.

65. To abate the pending hazards, Syngenta and the other seed companies began coordinating with NDEE on efforts to address conditions at the AltEn Facility.

66. With Defendants continuing to refuse to fulfill their legal and contractual obligations to clean up and mitigate conditions at the AltEn Facility, Syngenta and the other seed companies voluntarily signed a Memorandum of Agreement ("MOA") with NDEE under the NDEE's Voluntary Cleanup Program regarding an interim response and site stabilization measures at the AltEn Facility. Syngenta and the other companies that signed the MOA are members of the AFRG. The MOA explicitly recognizes AltEn as the owner and operator at the AltEn Facility and states that Syngenta and other members of the AFRG confirm their actions as being voluntary, and deny they caused any land or water pollution at the AltEn Facility site.

67. Since June 2021, the AFRG has been working with the NDEE to fund and implement response and stabilization measures at the AltEn Facility under the Voluntary Cleanup Program. The AFRG, through contributions by Syngenta and the other seed companies, has spent millions of dollars at the AltEn Facility.

68. The AFRG has hired Newfields, an experienced and well respected environmental and engineering firm with extensive experience in waste abatement, to coordinate the project. The AFRG hired Clean Harbors as the principal contractor for the work. Clean Harbors is a leading provider of comprehensive hazardous waste management services throughout North America. The AFRG is also using highly specialized subcontractors for laboratory, geotechnical, health and safety, agronomic, and construction support.

69.    At the AFRG's direction and expense, Newfields and Clean Harbors, and their subcontractors, have undertaken substantial interim emergency actions and interim response measures at the AltEn Facility over the course of the last year.

70.    They have undertaken significant wastewater management efforts. Defendants left approximately 180 million gallons of untreated wastewater in four impoundments at the AltEn Facility.  Three of those impoundments were overfilled above their design capacity, in violation of AltEn's permit requirements and Nebraska law.  NewFields and Clean Harbors brought onsite and installed ten large temporary tanks to store wastewater to lower the water in the impoundments to a safe level.

71.    They drained and refurbished the 3.5-acre emergency pond that Defendants had let deteriorate and had a failing liner.

72.    Even after the February 2021 spill, the digesters still contained seven million gallons of wastewater which contained manure from Mead Cattle. Defendants failed to safely winterize the digesters in preparation for freezing conditions in 2022.  Newfields and Clean Harbors safely transferred that water into the repaired emergency lagoon and other locations to avoid another catastrophic release from the digesters.

73.    Newfields and Clean Harbors is completing the construction of a new lined pond system that will add 50 million gallons of additional capacity for wastewater.  One of the ponds in that system is complete.  The second is in construction.

74.    Newfields and Clean Harbors successfully treated 13 million gallons of wastewater that Defendants left untreated at the AltEn Facility.  Water treatment efforts continue.  With approval and oversight from NDEE, the AFRG plans to provide farmers with treated water for productive use on cropland.

75.    NewFields and Clean Harbors also safeguarded the thousands of tons of contaminated and unprotected wet cake that Defendants left in separate areas about the AltEn Facility.  The wet cake, amounting to 250,000 cubic yards of

material, was consolidated to reduced environmental exposure and improve storm water collection efficiencies.  They are in the process of covering the consolidated pile to reduce odors and better protect the environment.

76.     Newfields and Clean Harbors have winterized the AltEn Facility to help prevent further releases.  They drained the digesters.  They have characterized and containerized chemicals that Defendants abandoned at the AltEn Facility.

### Defendants Abandon the AltEn Facility and their Cleanup Obligations

77.     While Syngenta and the other members of the AFRG have been engaged in substantial response and stabilization activities at the AltEn Facility, Defendants have undertaken no efforts to address the environmental conditions they caused.  Following the February 2021 spill, AltEn has not conducted regular operations at the AltEn Facility, nor has it taken responsibility for any site operations or maintenance activities, except to auction equipment and materials left onsite.  In the course of auctioning equipment and materials, AltEn and its contractors have engaged in activities believed to have contributed additional wastewater to the lagoons.

78.     Defendants made no efforts to properly decommission the ethanol plant and leave the site in a safe and secure state.

79.     AltEn has abandoned large quantities of chemicals in tanks and/or piping within the AltEn Facility. These chemicals include combustible liquids, acids, and high pH materials which present aquatic, respiratory, and other hazards.

80.     AltEn has abandoned the site, including its debts and financial obligations to a growing list of vendors.

81.     Mead Cattle and Green Disposal likewise have ceased operation and abandoned the AltEn site.

82.     AltEn was awarded more than $210,000 in COVID-19 relief money by the Nebraska Department of Economic Development in November 2020, just months before it shut down the AltEn Facility and abandoned the site.

Notwithstanding, AltEn has abandoned the site, discharged its work force, and failed to pay its debts and other financial obligations.

83.    AltEn, Mead Cattle, and Green Disposal have been and continue to be engaged in a systematic transfer of assets that has the effect of, and is appeared designed to, deprive creditors of access to assets that would be used to fulfill the financial obligations of AltEn and the other entities.

84.    AltEn, Mead Cattle, and Green Disposal appear to be liquidating their tangible assets since ceasing operations.

85.    For example, AltEn has sold at least eighty (80) pieces of equipment and parts used at the AltEn Facility, including semi-trucks, forklifts, stainless-steel piping, and electrical conduit, through BigIron Auctions, and continues to list items for sale to date. Most recently, AltEn sold additional equipment and parts through BigIron Auctions in an auction that closed on February 16, 2022.  AltEn has not contributed any of the sale proceeds from these auctions to site response efforts.

86.    Additionally, in the spring of 2021, Mead Cattle sold the feedlot property to Champion Feeders for millions of dollars. This sale was completed despite the written objections of Syngenta and another seed companies filed with the Saunders County Board of Supervisors, Village of Mead, and NDEE in a letter dated May 20, 2021.  Mead Cattle has not contributed any of the proceeds from this sale to site response efforts.

87.    Further, the principal office for AltEn (and multiple other AltEn entities and members, as set forth above in this Complaint), which is a residential property located at 5225 Renner Road on Lake Quivira, in Shawnee, Kansas, was sold in or around August 2021 for millions of dollars under value by Dennis Langley (former manager of AltEn and AltEn's related entities), and/or his assigns, beneficiaries, or representatives.  None of these sale proceeds were contributed to site response efforts.

88.    AltEn has failed to maintain the property by leaving storm damage to buildings and berms unrepaired, and by not providing weed control, mowing, snow

removal, or site security and failing to conduct inspections as required by AltEn's permits and applicable laws and regulations.

89.     AltEn has failed to pay any utility bills for the site, leaving Syngenta and the other seed companies to pay the gas and electric bills in order to perform the stabilization efforts at the AltEn Facility. The AFRG has also had to assume leases for office buildings and equipment while the AFRG stabilizes the site.

90.     AltEn has failed to pay property taxes for the AltEn Facility site, and on or about February 15, 2022, Saunders County issued a Property Tax Distress Warrant to AltEn in the amount of $23,274.20 for tax year 2021.

91.     Syngenta and other members of the AFRG have encountered difficulties in obtaining timely responses from AltEn to sign permit applications for site activities.

92.     The actions of AltEn, Mead Cattle, and Green Disposal show they have no intention to remediate and clean up the conditions they created at the site, and that they may be using cash from the other assets for other, unknown purposes, rather than expend those resources to satisfy their liabilities to Syngenta.

## COUNT I
### Breach of Contract Against AltEn

93.     Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

94.     Syngenta and AltEn entered into a RRM Agreement under which Syngenta supplied certain Seed to AltEn for utilization and processing by AltEn in a manner that complied with all applicable laws.

95.     Syngenta has performed all terms and conditions as required under the RRM Agreement.

96.     AltEn breached its contractual obligations to Syngenta under the RRM Agreement by and through its failures to comply with applicable federal, state, and local laws.

97.     AltEn has further breached its contractual obligations to Syngenta under the RRM Agreement to utilize the Seed in a safe and lawful manner.

98. AltEn has further breached its contractual obligations to Syngenta by failing to obtain and keep in effect all permits, licenses, and other documentation required to comply to governmental laws, rules, or regulations.

99. AltEn has further breached the RRM Agreement by causing contamination of the environment from its activities at the AltEn Facility.

100. AltEn has further breached the RRM Agreement by acting in a manner inconsistent with and directly against the purposes and the express and/or implied terms of the RRM Agreement.

101. As a direct and proximate result of AltEn's breach, Syngenta has and will continue to suffer losses, expenses, costs, and damages as a direct and proximate cause of the unlawful and improper acts and contractual breaches of AltEn, its owners, contractors, officers, employees, representatives, and agents in an amount to be determined at trial.

WHEREFORE, Syngenta prays for judgment against AltEn on Count I in an amount to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## COUNT II

## Breach of Warranty Against AltEn

85. Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

86. Pursuant to the RRM Agreement, AltEn warranted to Syngenta that AltEn had the requisite experience, knowledge, and expertise, suitable facilities, and qualified personnel to utilize the Seed received from Syngenta.

87. AltEn has breached this warranty by and through its failure to properly operate the AltEn Facility, including the management of ethanol byproducts and other materials, in compliance with the law and the RRM Agreement, as alleged herein.

88.     As a direct and proximate result of this breach of warranty, Syngenta has and will continue to suffer losses, expenses, costs, and damages as a direct and proximate cause of the unlawful and improper acts and contractual breaches of AltEn, its owners, contractors, officers, employees, representatives, and agents in an amount to be determined at trial.

WHEREFORE, Syngenta prays for judgment against AltEn on Count II in an amount to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## COUNT III

## Breach of Contract Against AltEn – Contractual Indemnity

89.     Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

90.     The RRM Agreement requires AltEn to indemnify Syngenta for any damages resulting from AltEn's non-performance of the RRM Agreement.

91.     Section 14 of the RRM Agreement provides that AltEn will indemnify Syngenta for any and all claims arising out of or connected with the Seed, including AltEn's utilization of the Seed or any other activities or operations of AltEn and its employees and agents, including negligence of AltEn or its employees and agents.

92.     Section 14 of the RRM Agreement further provides that AltEn will indemnify Syngenta for AltEn's failure to comply with any applicable laws, orders, rules, or regulations, in addition to liabilities or damages resulting from  any contamination of water, air, land, or the environment.

93.     AltEn has breached the RRM Agreement by failing to comply with applicable law and causing contamination of the environment from its activities at the site.  To date, AltEn has failed and/or refused to indemnify Syngenta as required by Section 14 of the RRM Agreement.

94.     Syngenta has and will continue to suffer losses, expenses, costs, and damages as a direct and proximate cause of the unlawful and improper acts and

contractual breaches of AltEn, its owners, contractors, officers, employees, representatives, and agents, in an amount to be determined at trial.

WHEREFORE, Syngenta prays for judgment against AltEn on Count III in an amount of to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## COUNT IV

### Common Law Indemnity Against All Defendants

95.     Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

96.     Syngenta has and will continue to suffer losses, expenses, costs, and damages as a direct and proximate cause of the unlawful and improper acts of Defendants and their owners, contractors, officers, employees, representatives, and/or agents, in an amount to be determined at trial.

97.     One or more of the Defendants are obligated to indemnify Syngenta for the loss, expenses, costs, and damages it has sustained, plus any additional damages Syngenta may suffer in the future in connection with this matter.

WHEREFORE, Syngenta prays for judgment against all Defendants on Count IV in an amount of to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## COUNT V

### Common Law Contribution Against All Defendants

98.     Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

99.     Due to AltEn's breach of contract and violations of law by AltEn and the other Defendants, as alleged herein, Syngenta has incurred costs pursuant to

the MOA with NDEE in responding to environmental conditions at the site. Such costs are the responsibility of Defendants.

100.   Syngenta has and will continue to suffer losses, expenses, costs, and damages as a direct and proximate cause of the unlawful and improper acts of Defendants and their owners, contractors, officers, employees, representatives, and agents, in an amount to be determined at trial.  Such losses, expenses, costs, and damages include the costs incurred by Syngenta under the MOA with NDEE to address conditions at the site that were caused by and are the responsibility of the Defendants.

101.   One or more of the Defendants are obligated to indemnify Syngenta for the loss, expenses, costs, liability obligations, and damages it has sustained, plus any additional damages Syngenta may suffer in the future in connection with this matter.

WHEREFORE, Syngenta prays for judgment against all Defendants on Count V in an amount of to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## <u>COUNT VI</u>

### <u>Equitable Subrogation Against All Defendants</u>

102.   Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

103.   AltEn and its employees and/or agents are responsible for various errors and omissions regarding the operation of the AltEn Facility.

104.   As a result, Syngenta has incurred damages in an amount to be proven at trial related to sums paid to stabilize and respond to environmental conditions at the Site that were caused by and are the responsibility of Defendants.  The damages Syngenta has incurred and may continue to incur were proximately caused by one or more of the Defendants, either jointly, severally, or both, and not by any action and/or omission of Syngenta.

105.   Syngenta is entitled to assert a right of subrogation against one or more of the Defendants in an amount to be proven at trial related to sums paid by Syngenta to stabilize and respond to environmental conditions at the Site, plus any additional costs, expenses, or damages Syngenta may suffer in the future.

WHEREFORE, Syngenta prays for judgment against all Defendants on Count VI in an amount of to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## COUNT VII

### Unjust Enrichment Against All Defendants

106.   Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

107.   Despite its obligations and requirements to comply with mandates and orders of the NDEE, Defendants have failed and/or refused to take any action to mitigate and/or clean up the AltEn Facility.

108.   Syngenta has and continues to incur costs to respond to environmental conditions and stabilize the AltEn Facility.

109.   Defendants' failure and/or refusal to mitigate and/or clean up the Site makes it inequitable for Defendants to retain the benefit of the reasonable value of such mitigation and cleanup efforts that have been incurred by Syngenta without compensating Syngenta for same.

110.   Defendants are aware of and have retained that benefit.

111.   One or more of the Defendants in the interests of justice and equity are required to compensate Syngenta for the sums paid by Syngenta to stabilize and clean up the AltEn Facility.

WHEREFORE, Syngenta prays for judgment against all Defendants on Count VII in an amount of to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest

thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## COUNT VIII

### Negligence Against AltEn, Tanner Shaw, and Scott Tingelhoff

112.    Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

113.    AltEn and its employees and/or agents, including Shaw and Tingelhoff, had a duty to properly manage materials and byproducts of ethanol production and dispose of waste at the AltEn Facility and a duty to ensure compliance with applicable laws, rules, and regulations.

114.    The damages incurred by Syngenta were the proximate result of the negligence of AltEn and its employees and/or agents, including Shaw and Tingelhoff, which consisted of acts and/or omissions, including, *but not limited to*, one or more of the following:

a.    Improperly storing and/or disposing of wet cake at the AltEn Facility;

b.    Improperly handling and utilizing contaminated grain byproduct as a soil conditioner at the AltEn Facility;

c.    Improperly handling contaminated biochar that was generated by AltEn's operations at the AltEn Facility;

d.    Failing to maintain lagoons containing untreated water located on the AltEn Facility property at or below the maximum operating water depth;

e.    Failing to maintain the liners in the lagoons at the AltEn Facility in a safe condition;

g.    Failing to maintain the digesters at the AltEn Facility in order to prevent the emergency release that occurred on February 12, 2021;

h.    Failing to safely winterize the ethanol process plant and piping and the chemical inventory abandoned at the AltEn Facility;

i.        Failing to properly manage and dispose of solid waste and comply with other applicable laws and regulations related to protection of land and water from contamination; and,

j.        Operating a solid waste management facility on its property without a permit.

115.    As a direct and proximate result of the negligence of AltEn and its employees and/or agents, including Shaw and Tingelhoff, Syngenta has incurred and/or will incur in the future losses, expenses, costs, and damages in an amount to be proven at trial.

116.    Defendants AltEn, Shaw, and Tingelhoff are vicariously liable for the actions and/or inactions of one another, as well as AltEn's employees and/or agents, pursuant to the doctrine of *respondeat superior*, all theories of agency, and/or all theories of joint venture.

WHEREFORE, Syngenta prays for judgment against AltEn, Shaw, and Tingelhoff on Count VIII in an amount of to be proven at trial, plus charges, interest, and consequential and incidental damages; prejudgment and post-judgment interest thereon at the highest legal rate; the costs of this lawsuit; attorney fees; and for such further relief as the Court deems just and equitable.

## <u>COUNT IX</u>

## <u>Declaratory Judgment</u>

117.    Syngenta hereby reincorporates the above Paragraphs of its Complaint as though fully set forth herein.

118.    A real and active controversy exists between the parties based on the allegations set forth in this Complaint, and the controversy is susceptible to immediate resolution and judicial enforcement by this Court pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

119.    The plain and unambiguous language of the RRM Agreement requires AltEn to pay Syngenta for its damages incurred with respect to the AltEn Facility site.

120.   AltEn has failed and/or refused to pay for such damages or to indemnify Syngenta as required by the RRM Agreement.

WHEREFORE, Syngenta prays for a declaration and Order by this Court that the RRM Agreement is valid and enforceable, that AltEn and the other Defendants are responsible to respond to and clean up environmental conditions at the site, and that AltEn and the other Defendants are obligated to indemnify and otherwise compensate Syngenta.

## **REQUEST FOR RELIEF**

WHEREFORE, Syngenta respectfully requests this Court issue a judgment in favor of Syngenta and against the Defendants on each Count of this Complaint, and order the following relief:

A)      damages in an amount of no less than $75,000;

B)      for its costs of this lawsuit;

C)      for its attorney fees as allowed by law;

D)      for charges, interest, and consequential and incidental damages;

E)      for prejudgment and post-judgment interest as allowed by law;

F)      for prejudgment attachment of AltEn's, Mead Cattle's and Green Disposal's assets and proceeds received from the sale of assets, as well as any of their assets and/or sale proceeds distributed to their members, submembers, affiliates and employees, including Shaw and/or Tingelhoff.

G)      for all other and further relief that the Court deems just and proper.

## **JURY DEMAND**

Syngenta hereby demands a trial by jury.

DATED this 22nd day of February 2022.

SYNGENTA SEEDS, LLC, Plaintiff

By:   /s/ *Stephen M. Bruckner*
Stephen M. Bruckner, #17073
Katherine A. McNamara, #25142
FRASER STRYKER PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, Nebraska 68102-2663
(402) 341-6000
sbruckner@fraserstryker.com
kmcnamara@fraserstryker.com

and

Michael R. Shebelskie
Matthew Z. Leopold
Gregory R. Wall
Jonathan L. Caulder
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219
(804) 788-8200
mshebelskie@HuntonAK.com
mleopold@HuntonAK.com
gwall@HuntonAK.com
jcaulder@HuntonAK.com
***Pro Hac Vice Admission Pending***

ATTORNEYS FOR PLAINTIFF